Slip Op. 23-156

UNITED STATES COURT OF INTERNATIONAL TRADE

| | : | |
|---|---|---|
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| v. | : | |
| | : | Court No. 20-03948 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., *et al.*, | : | |
| | : | |
| Defendant-Intervenors. | : | |

**MEMORANDUM**

[U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Remand are sustained.]

Dated: October 30, 2023

*Stephanie M. Bell*, Wiley Rein LLP, of Washington, D.C., argued for Plaintiff American Manufacturers of Multilayered Wood Flooring. With her on the brief were *Timothy C. Brightbill* and *Tessa V. Capeloto*.

*Sonia M. Orfield*, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant the United States. With her on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Tara K. Hogan*, Assistant Director. Of counsel on the brief was *Rachel A. Bogdan*,

Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Stephen W. Brophy*, Husch Blackwell LLP, of Washington, D.C., for Defendant-Intervenors Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., Jiangsu Keri Wood Co., Ltd., and Sino-Maple (Jiangsu) Co., Ltd. With him on the brief was *Jeffrey S. Neeley*.

*Wenhui (Flora) Ji*, Mowry & Grimson, PLLC, of Washington, D.C., for Defendant-Intervenor Yihua Lifestyle Technology Co., Ltd. With her on the brief was *Kristin H. Mowry* and *Sarah M. Wyss*.[1]

*Mark R. Ludwikowski*, Clark Hill PLC, of Washington, D.C., for Defendant-Intervenor Jiangsu Guyu International Trading Co., Ltd. With him on the brief was *Courtney G. Taylor*.

*Ronald M. Wisla*, Fox Rothschild LLP, of Washington, D.C., for Defendant-Intervenors Metropolitan Hardwood Floors, Inc., Galleher Corp., and Galleher LLC. With him on the brief were *Lizbeth R. Levinson* and *Brittney R. Powell*.

Eaton, Judge: Before the court are the U.S. Department of Commerce's ("Commerce" or the "Department") final results of redetermination pursuant to the court's remand order in *American Manufacturers of Multilayered Wood Flooring v. United States*, 47 CIT __, 639 F. Supp. 3d 1216 (2023) ("*American Manufacturers I*"). *See* Final Results of Redetermination Pursuant to Court Remand, ECF No. 81-1 ("Remand Results").

Plaintiff American Manufacturers of Multilayered Wood Flooring and Defendant-Intervenor Jiangsu Guyu International Trading Co., Ltd. (the only mandatory respondent that was a party to this action) each filed comments indicating that they do not contest the Remand Results. *See* Pl.'s Cmts. Remand Determination ("Pl.'s Cmts."), ECF No. 84; Jiangsu Guyu's Cmts. Remand Results ("Guyu's Cmts."), ECF No. 83. No other party filed comments.

---

[1] On May 22, 2023, the court granted the motion of counsel for Yihua Lifestyle Technology Co., Ltd. ("Yihua") to withdraw from the case. *See* Order (May 22, 2023), ECF No. 75. Since then, Yihua has not appeared through new counsel, and did not file comments on the Remand Results. *See* USCIT R. 75(b) (providing that corporations "must appear through an attorney authorized to practice before the court"). Nothing on the record indicates that Yihua has any objection to the Remand Results.

In *American Manufacturers I*, the court considered Plaintiff's challenge to Commerce's selection of the surrogate value for glue, as well as its calculation of the surrogate financial ratio for manufacturing overhead and the surrogate hourly labor value in the final results of the seventh administrative review of the antidumping duty order on multilayered wood flooring from the People's Republic of China. *See American Manufacturers I*, 47 CIT at __, 639 F. Supp. 3d at 1220; *see also Multilayered Wood Flooring From the People's Republic of China*, 85 Fed. Reg. 78,118 (Dep't of Commerce Dec. 3, 2020) and accompanying Issues and Decision Mem. (Nov. 20, 2020), PR 468.

The court found that Commerce's selection of the surrogate value for the glue input was supported by substantial evidence. *American Manufacturers I*, 47 CIT at __, 639 F. Supp. 3d at 1236. The court also found, however, that neither the calculation of the surrogate financial ratio for manufacturing overhead nor the calculation of the surrogate hourly labor value was supported by substantial evidence. *Id.* at 1229, 1234.

For the manufacturing overhead ratio, the court found that Commerce had not explained why it did not place in the numerator the whole amount of indirect production expenses identified in the surrogate financial statement.[2] *Id.* at 1229. The court thus remanded for Commerce to either place this whole amount in the numerator or explain why it chose not to do so, and, if Commerce chose the latter option, to "state why other categories of overhead normally placed in the numerator were not placed in the numerator here." *Id.* at 1237.

---

[2] Instead of using the amount for indirect production expenses, Commerce summed three entries from the profit and loss account (depreciation, other materials, and third-party service expenses) to serve as the numerator of the manufacturing overhead ratio. *See American Manufacturers I*, 47 CIT at __, 639 F. Supp. 3d at 1227.

The court further found that Commerce had failed to explain the source of the numbers used to calculate the hourly labor value and "did not provide a reasonable explanation, supported by substantial evidence, for rejecting Plaintiff's proposed data." *Id.* at 1232-34. The court remanded for Commerce to "reconsider the Labor Rate Policy's use in this case," and, if it continued to use it, to "explain its source and the reason why it is reasonable to use it here, including how it would be more specific for use in Romania than the source provided by Plaintiff." *Id.* at 1237.

On August 24, 2023, Commerce issued its Remand Results. Commerce recalculated the manufacturing overhead ratio using the amount for indirect production expenses identified in the surrogate financial statement in the numerator of the ratio. *See* Remand Results at 5. Concluding that this amount included energy costs, however, Commerce subtracted energy costs from the indirect production expenses and placed them in the denominator, which included direct expenses, i.e., materials, labor, and energy. *Id.* at 6, 15-18.

To substantiate the source of the numbers used in its Labor Rate Policy, Commerce placed on the record data from the International Labor Organization ("ILO") based on which Commerce concluded that there are 24 working days per month, 8 hours per day, and 5.5 days per week for workers in ILO member nations, including the surrogate country, Romania. *Id.* at 8. Then, to calculate the surrogate hourly labor value, Commerce used ILO data that Plaintiff placed on the record reflecting the hours actually worked per week in Romania, from which it calculated an amount for the hours actually worked per month. *Id.* at 9, 19. Commerce divided the undisputed monthly average net earnings in Romania for employees that manufacture wood products by the hours worked per month to reach the surrogate hourly labor value. *Id.* at 19.

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction lies under 28 U.S.C. § 1581(c) (2018) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018). The court will sustain a determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Commerce's calculation of the manufacturing overhead ratio complies with the court's remand order because it used the amount for indirect production expenses in the numerator of the ratio and stated its reasons for subtracting energy costs from this amount and placing them in the denominator. This was reasonable because energy costs are normally included in the denominator. *See Dorbest Ltd. v. United States*, 30 CIT 1671, 1715 n.36, 462 F. Supp. 2d 1262, 1301 n.36 (2006) (explaining the calculation of the manufacturing overhead value). In addition, Commerce reasonably used the Romanian ILO data to calculate the surrogate hourly labor value because this data reflects hours actually worked in the surrogate country. Even so, Commerce substantiated the source of the numbers contained in its Labor Rate Policy by placing on the record the ILO data and demonstrating how it calculated each of the numbers. Therefore, the court finds that Commerce's uncontested Remand Results comply with the court's remand order and are supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the court sustains the Remand Results. Judgment will be entered accordingly.

                                                  /s/ Richard K. Eaton
                                                          Judge

Dated:    October 30, 2023
             New York, New York